UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KIMBERLY H.,

                Plaintiff,

      v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

**DECISION AND ORDER**

1:21-CV-00269 EAW

## <u>INTRODUCTION</u>

Represented by counsel, plaintiff Kimberly H. ("Plaintiff") brings this action pursuant to Title XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying her application for supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 8; Dkt. 9), and Plaintiff's reply (Dkt. 11). For the reasons discussed below, Plaintiff's motion (Dkt. 8) is denied and the Commissioner's motion (Dkt. 9) is granted.

**BACKGROUND**

Plaintiff protectively filed her application for SSI on October 13, 2017. (Dkt. 7 at 20, 122).[1]  In her application, Plaintiff alleged disability beginning October 13, 2017. (*Id.* at 20, 108).  Plaintiff's application was initially denied on February 16, 2018. (*Id.* at 20, 123-26).  At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") Mary Mattimore on June 15, 2020. (*Id.* at 20, 61-106).  On September 17, 2020, the ALJ issued an unfavorable decision. (*Id.* at 17-41).  Plaintiff requested Appeals Council review; her request was denied on December 17, 2020, making the ALJ's determination the Commissioner's final decision. (*Id.* at 6-11).  This action followed.

**LEGAL STANDARD**

**I.    District Court Review**

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)

---

[1]    When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

(quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.   <u>Disability Determination</u>

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 416.920(d). If the impairment meets or medically

equals the criteria of a Listing and meets the durational requirement (*id*. § 416.909), the claimant is disabled.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments.  *See id*. § 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work.  *Id*. § 416.920(f).  If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled.  *Id*. § 416.920(g).  To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience.  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I.     The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 416.920.  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since October 13, 2017, the application date.  (Dkt. 7 at 22).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of: "asthma, osteoarthritis bilateral hands, right ear hearing loss, partial left ear hearing loss,

right shoulder acromioclavicular ('AC') joint arthritis and rotator cuff impingement syndrome status post arthroscopy, alcohol use disorder, generalized anxiety disorder, posttraumatic stress disorder ('PTSD'), bipolar disorder, [and] major depressive disorder ('MDD')." (*Id.* at 22-23). The ALJ further found that Plaintiff's myofascial pain, mitral valve disorder, hypertension, history of right wrist injury, left foot stress fractures, cocaine and cannabis use disorder, cervical disc disorder, and insomnia were either non-severe or not medically determinable impairments. (*Id.* at 23).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.* at 24). The ALJ particularly considered the criteria of Listings 1.02, 3.03, 12.04, 12.06, and 12.15 in reaching her conclusion. (*Id.* at 24-26).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. § 416.967(b), with the following additional limitations:

> [Plaintiff] can frequently climb stairs, ladders, ropes, scaffolds, balance, stoop, kneel, crouch, and crawl; can frequently reach in all planes with her right dominant upper extremity and frequently finger, handle, and feel bilaterally; can work in a moderate noise level environment as defined in Appendix D of the Selected Characteristics of Occupations; can have no concentrated exposure to fumes, odors, dust, gases or other pulmonary irritants; she can do no work at unprotected heights, or with moving mechanical parts; can perform low stress job defined as simple, routine work and make simple workplace decisions not at production rate pace (defined as assembly line pace); can tolerate frequent interaction with supervisors, coworkers and the public and can tolerate minimal changes in workplace processes and settings.

(*Id.* at 26). At step four, the ALJ found that Plaintiff had no past relevant work. (*Id.* at 34).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of routing clerk, cleaner, sorter.  (*Id.* at 34-35).  Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act.  (*Id.* at 35).

II.   **The ALJ's Determination is Supported by Substantial Evidence and Free from Reversible Error**

Plaintiff asks the Court to vacate the ALJ's decision and remand this matter to the Commissioner, arguing that: (1) the ALJ's RFC finding is "not tethered to medical opinion"; (2) the ALJ erred in failing to re-contact primary care provider Dr. Shanthi Rajendran to seek clarification of his opinions; and (3) the ALJ erred in failing to take into account the episodic nature of Plaintiff's symptoms and the combined effects of her impairments.  (Dkt. 8-1).  The Court is not persuaded by these arguments, for the reasons discussed below.

A.   **RFC Finding**

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).  An ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in [the] decision." *Id.* Further, while an ALJ is not a medical professional and therefore cannot base an RFC assessment solely on "bare medical findings," *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (quotation and citation omitted), "[a]n RFC finding is administrative in

nature, not medical, and its determination is within the province of the ALJ, as the Commissioner's regulations make clear." *Curry v. Comm'r of Soc. Sec.*, 855 F. App'x 46, 48 n.3 (2d Cir. 2021) (finding it was proper for the ALJ "pursuant to his statutory authority . . . [to] consider[ ] the medical and other evidence in the record in its totality to reach an RFC determination"); *see also Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) ("Where . . . the record contains sufficient evidence from which an ALJ can assess the claimant's residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." (quotations, citations, and alteration omitted)).

As an initial matter, the Court notes that the argument made by Plaintiff's counsel consists largely of seriatim citations to case law, with no meaningful attempt to tie that case law to the specific facts of this case. This manner of briefing makes it difficult for the Court to discern the basis for Plaintiff's contention that the ALJ's RFC finding is not supported by substantial evidence. However, it appears that the essence of Plaintiff's argument is that the ALJ created an "evidentiary gap" by failing to accord controlling weight to any particular medical opinion, and thus must have relied upon her own lay opinion in reaching an RFC finding. (*See* Dkt. 8-1 at 20-21).

This argument fails on multiple fronts. As noted above, there is no requirement that an ALJ's RFC finding correspond to a single medical opinion. *Matta*, 508 F. App'x at 56; *see also Wilson v. Colvin*, No. 6:16-CV-06509-MAT, 2017 WL 2821560, at *5 (W.D.N.Y. June 30, 2017) ("The fact that an RFC assessment does not correspond exactly to a medical expert's opinion in the record does not mean that the RFC assessment is 'just made up.'").

The ALJ was free to base her RFC findings on the portions of the various medical opinions that she found persuasive, along with the other evidence of record.

Further, it is readily apparent that the ALJ did not simply rely on her own lay opinion in making an RFC finding. Considering first Plaintiff's physical RFC, the ALJ explained that she found persuasive the opinions of state agency reviewing medical consultant Dr. C. Krist and consultative examiner Dr. Michael Rosenberg. (Dkt. 7 at 32). Dr. Krist opined that Plaintiff could perform medium work with hearing limitations and environmental limitations as to concentrated exposure to respiratory irritants, while Dr. Rosenberg opined that Plaintiff should avoid smoke, dust, and known respiratory irritants secondary to history of asthma, had "minimal restriction for activity that perform [sic] carrying heavy objects, performing overhead activity, and activity requiring pulling, pushing, reaching, or repetitive use of the arms," and had "mild restriction for activities that require[] fine auditory acuity[.]" (*Id*. at 117-19, 585). The ALJ's RFC finding incorporated the limitations identified by Drs. Krist and Rosenberg, but also included greater limitations— specifically, a limitation to light work and additional manipulative limitations as to reaching—based on Plaintiff's own testimony that she continued to struggle with right shoulder pain and osteoarthritis. (*Id*. at 7).

"An ALJ can find greater limitations than opined by a medical source," *Lillian R. v. Comm'r of Soc. Sec.*, No. 20-CV-00955, 2022 WL 2275672, at *4 (W.D.N.Y. June 23, 2022), and is in particular permitted to credit, partially or in full, a claimant's own testimony regarding his or her limitations, *see e.g., Ramsey v. Comm'r of Soc. Sec.*, 830 F. App'x 37, 39 (2d Cir. 2020) ("Indeed, the ALJ occasionally deviated from consultative

examiners' recommendations to *decrease* Ramsey's RFC based on other evidence in the record, exemplified by the ALJ's determination that Ramsey should not interact with the public.  The ALJ committed no error by determining the scope of Ramsey's RFC because that is his responsibility." (emphasis in original)); *My-Lein L. v. Comm'r of Soc. Sec.*, 551 F. Supp. 3d 100, 106-07 (W.D.N.Y. 2021) ("The fact that the ALJ imposed more restrictive limitations is not a basis for remand." (collecting cases)).  Contrary to Plaintiff's argument, the ALJ's physical RFC finding is supported by substantial evidence in the record.

Turning to the mental RFC finding, the ALJ found somewhat persuasive a medical source statement by psychiatrist Dr. Loida Reyes and social worker Jennifer Wells.  (Dkt. 7 at 33).  The ALJ significantly credited this opinion, but explained that Dr. Reyes's assessment of a marked limitation in interacting with others was inconsistent with Plaintiff's own reports of "significant socialization, spending time with friends, babysitting a two-year-old, work activity, and a relationship," while Dr. Reyes's assessment of a marked limitation in attending to concentration, persistence, and pace was inconsistent with mental status examinations performed by Dr. Reyes and Ms. Wells, and with Plaintiff's own report that treatment with Abilify had allowed her to "complet[e] all activities of daily living."  (*Id.*).  An ALJ may reject the portions of a medical opinion that are inconsistent with the evidence of record.  *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002).  The Court finds no error in the ALJ's consideration of this opinion.

The ALJ further explained that consultative psychiatric examiner Dr. Christine Ransom had opined that Plaintiff has "mild episodic difficulty understanding, remembering and applying complex directions and instructions, regulating emotions,

controlling behavior and maintaining well-being," and that while "the record support[ed] this degree of limitation," it also supported greater limitations based on Plaintiff's ongoing mental health treatment.  (*Id*. at 31-32).  Again, the ALJ is permitted to assess limitations in excess of those identified by a medical source.  While Plaintiff may disagree with the ALJ's consideration of the medical evidence of record, that does not mean that the ALJ was relying on her own lay opinion in assessing Plaintiff's mental RFC or that the RFC finding is not supported by substantial evidence.

Plaintiff also contends that the ALJ used improper selective reasoning in order to reject medical opinions with more restrictive limitations.  (Dkt. 8-1 at 22-25).  This argument lacks merit.  Under the regulations applicable to Plaintiff's claim, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources."  20 C.F.R. § 404.1520c(a).  Instead, the Commissioner considers the persuasiveness of all medical opinions by reference to the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, purpose and extent of the treatment relationship, and the examining relationship; (4) specialization; and (5) any other factors that "tend to support or contradict a medical opinion or prior administrative medical finding."  *Id*. at § 404.1520c(c).

When evaluating the persuasiveness of a medical opinion, the most important factors are supportability and consistency.  *Id*. at § 404.1520c(a).  With respect to "supportability," the regulations provide that "[t]he more relevant the objective medical

evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* at § 404.1520c(c)(1).  With respect to "consistency," the regulations prove that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at § 404.1520c(c)(2).  The ALJ must articulate her consideration of the medical opinion evidence, including how persuasive she finds the medical opinions in the case record.  *Id.* at § 404.1520c(b).  The ALJ must explain how she considered the "supportability" and "consistency" factors for a medical source's opinion.  20 C.F.R. § 404.1520c(b)(2).  The ALJ may—but is not required to—explain how she considered the remaining factors.  *Id.*

Here, the ALJ followed these regulations in finding certain medical opinions entirely unpersuasive.  The ALJ rejected the opinion of state agency psychiatric consultant Dr. T. Bruni, who stated that Plaintiff had only non-severe mental impairments, because it was unsupported by and inconsistent with the evidence of record showing that Plaintiff had serious mental health symptoms, attended regular psychiatric counseling, and took medication for her psychiatric impairments.  (Dkt. 7 at 31).  The ALJ also rejected a May 2019 statement by Dr. Reyes stating that Plaintiff "presents with significant depression, anxiety and PTSD symptoms," but declining to complete the section of the form identifying specific functional limitations.  (*Id*. at 32).  The ALJ explained that this statement referenced treatment history outside the relevant period, provided "no real opinion as to

functional limitations," was devoid of any supporting detail, and was inconsistent with evidence in the record showing improvement with treatment. (*Id*.).

The ALJ further rejected a statement from Dr. Rajendran indicating that Plaintiff had "total disability due to PTSD." (*Id*.). As the ALJ correctly noted (*see id*.), the regulations provide that a statement by a provider about whether a claimant is disabled is "inherently neither valuable nor persuasive." 20 CFR § 416.920b(c). The ALJ also rejected a March 2018 statement by Dr. Rajendran stating that Plaintiff had moderate limitations for lifting and carrying and was "very limited" for hearing, but identifying no limitations in any other area of physical or mental functioning. (Dkt. 7 at 32). The ALJ explained that the form had not been fully completed and that the opinion was inconsistent with the evidence of record, which demonstrated that Plaintiff had ongoing mental health treatment. (*Id*.). Finally, the ALJ rejected a statement from social worker Charmaine Fanara indicating that Plaintiff "had moderate limitations in several areas of functioning," explaining that: (1) the statement contained no supporting detail; (2) the degree of limitation was inconsistent with the evidence of record; and (3) the statement indicated that the identified restrictions were expected to last only 4-6 months, thus providing no useful information about long-term limitations. (*Id*. at 32-33).

Plaintiff has not identified any specific error in the ALJ's consideration of these opinions, nor does the Court find any reversible error in its own review. The ALJ adequately explained the reasons for her assessment of these opinions, including considering supportability and consistency. Moreover, contrary to Plaintiff's contention that the ALJ engaged in selective reasoning, the ALJ rejected both opinions that were more

favorable to Plaintiff than the RFC finding and opinions that were less favorable to Plaintiff than the RFC finding.

In sum, the Court finds that the ALJ's RFC finding was grounded in and supported by the evidence of record, and that there is no basis to disturb the ALJ's conclusions.

**B.    Duty to Recontact**

Plaintiff next contends that the ALJ should have recontacted Dr. Rajendran "[t]o the extent the ALJ found Dr. Rajendran vague." (Dkt. 8-1 at 25-26). This argument is severely underdeveloped, as evidenced by the fact that in the two paragraphs devoted thereto, Plaintiff's counsel refers to Dr. Rajendran as both "Dr. Anand" and "Dr. []". (*Id.* at 26 (brackets in original)). Indeed, the Court is unable to discern the basis for this argument, inasmuch as—as set forth above—the ALJ did not conclude that any of Dr. Rajendran's opinions were impermissibly vague.

In any event, "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information. . . ." *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (internal quotation marks and citation omitted). In particular, "[t]he duty to recontact arises only if the ALJ lacks sufficient evidence in the record to evaluate the doctor's findings. . . . Where the record before the ALJ is complete enough to form a determination as to plaintiff's disability, the ALJ is not required to recontact a medical source." *Raftis v. Comm'r of Soc. Sec.*, No. 5:17-CV-0514 (WBC), 2018 WL 1738745, at *6 (N.D.N.Y. Apr. 6, 2018) (citing *Guillen v. Berryhill*, 697 F. App'x 107, 108 (2d Cir.

2017)).  Here the record was more than adequate to allow the ALJ to make a disability determination, and the ALJ accordingly was not obliged to recontact Dr. Rajendran.

### C.  Consideration of Episodic Symptoms and Combined Effects of All Impairments

Plaintiff's final contention is that the ALJ failed to consider the episodic nature of her symptoms or the combined effects of her impairments.  (Dkt. 8-1 at 26-30).  However, the ALJ expressly stated that she was considering "the limitations and restrictions imposed by the combined effects of all [Plaintiff's] medically determinable impairments" (Dkt. 7 at 31), and the medical opinions and treatment records on which she relied in reaching her RFC finding accounted for the episodic nature of certain of Plaintiff's symptoms. Plaintiff's final argument is thus in reality a repackaging of her contention that the ALJ should have given greater weight to certain aspects of the medical evidence.  (*See id*. at 28-29).  However, it is not the function of this Court to reweigh the evidence—so long as the ALJ's conclusions are supported by substantial evidence (which the Court has already found for the reasons set forth above), they must be affirmed.  *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012).

Further, while Plaintiff contends that the ALJ "failed to consider credibility factors such as financial constraints, homelessness, and modification of activities, like isolation," and did not consider the fact that "poverty or mental disability may be a good reason for lack of treatment" (Dkt. 8-1 at 29) in assessing Plaintiff's credibility, the ALJ did not base her credibility determination on any failure to seek treatment by Plaintiff (*see* Dkt. 7 at 31). This is accordingly not a basis for reversal or remand.

**CONCLUSION**

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 9) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt. 8) is denied.  The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: April 28, 2023
       Rochester, New York

- 15 -